**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |
|---|---|
| CYDNE KIMBROUGH, | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | *      Civil No. 25-2187-BAH |
| MAYOR AND CITY COUNCIL OF BALTIMORE ET AL., | * |
| Defendants. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

Plaintiff Cydne Kimbrough ("Kimbrough"), proceeding pro se, brought suit against the Mayor and City Council of Baltimore (the "City") and the Baltimore City Department of Transportation ("DOT") (collectively "Defendants") alleging five counts related to her former employment with DOT. ECF 1 (complaint). Pending before the Court is Defendants' motion to dismiss. ECF 11. Kimbrough filed an opposition and supplement, ECFs 13 and 14, and Defendants filed a reply, ECF 18. All filings include memoranda of law and some include exhibits.[1] The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). Accordingly, for the reasons stated below, Defendants' motion to dismiss is **GRANTED**, and Kimbrough's complaint will be **DISMISSED WITHOUT PREJUDICE**.

---

[1] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

## I.    BACKGROUND[2]

Kimbrough worked for Defendants as a Grants Manager and Resource Development Coordinator from April 2022 until some time after February 2024. ECF 1, at 2 ¶¶ 3, 6, at 3 ¶¶ 11, 12. Kimbrough alleges that she "teleworked full-time from Georgia from the date of hire." *Id.* at 2 ¶ 3. Between spring 2022 and spring 2023, Kimbrough alleges that she "raised serious concerns regarding financial compliance and potential misuse of federal grant funds." *Id.* at 2 ¶ 7. Kimbrough "filed a formal whistleblower complaint with the Baltimore City Office of Inspector General." *Id.* After "these protected disclosures," Kimbrough alleges that she "began experiencing retaliatory actions" including "multiple written reprimands," a "hostile work environment," a "five-day suspension without pay in May 2024," the "denial of telework flexibility despite medical documentation and remote work history," and a "pattern of exclusion and disregard from her department's leadership." *Id.* at 2–3 ¶ 8.

Kimbrough asserts that she is "a qualified individual with a disability" who "submitted multiple ADA accommodation requests, supported by physician documentation, for continued full-time telework," which were "denied or delayed." *Id.* at 3 ¶ 9. Kimbrough also asserts, however, that one accommodation was "partially approved on February 21, 2024," although she states that this was after "irreparable harm had already been done" to her "work conditions, health, and personnel record." *Id.* ¶ 11. Kimbrough alleges that because of the "retaliation, lack of accommodation" and "hostile environment" she has experienced, she "was constructively discharged and has remained unemployed since." *Id.* ¶ 12. Moreover, despite applying "for multiple positions within Baltimore City, including her former position," Kimbrough alleges that "she was only interviewed for one position and was not rehired." *Id.* ¶ 13. Finally, Kimbrough

---

[2] All well-pled facts alleged in the complaint are assumed true at the dismissal stage. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

2

notes that she was "denied unemployment benefits based on the City's false claim of 'misconduct.'" *Id.* ¶ 14.

Based on the above factual allegations, Kimbrough brought the present action on July 7, 2025, asserting five counts in her complaint. *See id.* at 3–5. Those claims include violation of the ADA (Count I), *id.* at 3–4, retaliation under Title VII and the ADA (Count II), *id.* at 3, whistleblower retaliation (Count III), *id.*, wage violations and loss of income (Count IV), *id.*, and failure to rehire (Count V), *id.* at 4–5. Kimbrough requests back pay, front pay or reinstatement, compensatory damages for emotional distress and harm to reputation, punitive damages under the ADA and Title VII, civil penalties, expungement of all negative employment records, injunctive relief related to "corrective action and training" for DOT, and attorneys' fees and costs. *Id.* at 5. On November 25, 2025, Defendants filed a motion to dismiss for failure to state a claim, ECF 11, which is now ripe for decision.

## II.    **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) governs dismissals for failure to "state a claim upon which relief can be granted." In considering a motion under this rule, courts discount legal conclusions stated in the complaint and "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court then draws all reasonable inferences in favor of the plaintiff and considers whether the complaint states a plausible claim for relief on its face. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747

3

(4th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).

Because Kimbrough brings this suit pro se, the Court must liberally construe her pleadings, holding them to a less stringent standard than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). This leniency has its limits, though. "A court may not construct the plaintiff's legal arguments for h[er], nor is a district court required to recognize 'obscure or extravagant claims defying the most concerted efforts to unravel them.'" *Runge v. Barton*, Civ. No. 6:08-0231-GRA, 2009 WL 3245471, at *1 (D.S.C. Oct. 2, 2009) (first citing *Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993), then quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir. 1985)), *aff'd*, 368 F. App'x 361 (4th Cir. 2010).

## III.   ANALYSIS

### A.   Kimbrough's Exhibits

As an initial matter, the Court addresses the extensive exhibits Kimbrough has attached to her opposition to Defendants' motion to dismiss. *See, e.g.*, ECF 13, at 4–7. Kimbrough characterizes Defendants' motion as a "motion to dismiss or, in the alternative, for summary judgment." *Id.* at 2 (capitalization altered). She also argues that "[s]ummary judgment prior to discovery would be premature and contrary to controlling precedent." *Id.* However, Defendants have not styled their motion in the alternative, *see* ECF 11, and they specify in their reply that nothing warrants the conversion of their motion to dismiss into a motion for summary judgment, *see* ECF 18, at 2–3.

"As a general rule, the court does not consider extrinsic evidence at the motion to dismiss stage[.]" *Reamer v. State Auto. Mut. Ins. Co.*, 556 F. Supp. 3d 544, 549 (D. Md. 2021), *aff'd*, No.

4

21-2432, 2022 WL 17985700 (4th Cir. Dec. 29, 2022). However, the Court may consider "documents attached to the complaint, 'as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic.'" *Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019) (quoting *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)). A document is "integral" when "its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis omitted). The Court may also consider documents referenced in the complaint. *Medispec, Ltd. v. Chouinard*, 133 F. Supp. 3d 771, 772 n.1 (D. Md. 2015) (citing *Abelman v. Wells Fargo Bank, N.A.*, 976 F. Supp. 2d 660, 662 n.1 (D. Md. 2013)).

Kimbrough does not reference the documents attached to her *complaint* in her opposition to Defendants' motion to dismiss. *See generally* ECF 13; ECF 14. However, she has attached hundreds of pages of exhibits to her opposition and supplement. *See id.* Kimbrough's attachments appear to be included based on an incorrect interpretation of Defendants' motion as one for summary judgment, rather than for dismissal. *See, e.g.*, ECF 13, at 8 (arguing that summary judgment is premature). Moreover, the attached exhibits do not generally appear to be integral to the complaint or specifically referenced therein. *See, e.g.*, ECF 13, at 4–7 (describing the exhibits attached to the opposition). Accordingly, the Court will not consider Kimbrough's exhibits in resolving Defendants' motion to dismiss.

### B.    Defendant Baltimore City Department of Transportation

The City argues that DOT is not an entity that can sue or be sued and thus must be dismissed as a defendant in this action. ECF 11-1, at 3. The Court agrees. As the Supreme Court of Maryland has made clear, "absent a statutory or constitutional provision creating a government agency, an 'office' or 'department' bears no unique legal identity, and thus, it cannot be sued under Maryland

law." *Owens v. Baltimore City State's Att'ys Off.*, 767 F.3d 379 (4th Cir. 2014) (quoting *Boyer v. State*, 594 A.2d 121, 128,n.9 (Md. 1991)). The Baltimore City Charter states that "[t]he inhabitants of the City of Baltimore are a corporation, by the name of the 'Mayor and City Council of Baltimore,' and by that name . . . may sue and be sued . . . ." Balt. City Charter, art. I, § 1. Although the Baltimore City Charter creates DOT, *see id.* art. VII, § 114, it does not permit DOT to sue or be sued. "Neither party has cited a statutory or constitutional provision authorizing suit of the DOT, nor can this Court locate one." *Douglas v. Mayor & City Council of Balt. City*, Civ. No. RDB-15-0718, 2016 WL 927146, at *1 n.1 (D. Md. Mar. 4, 2016); *see also Grandy v. City of Baltimore*, Civ. No. ELH-18-1330, 2018 WL 6726546, at *7 (D. Md. Dec. 20, 2018) ("Judges of this Court have recognized that a department within Baltimore City government or within a Maryland county government may not sue or be sued." (collecting cases)). Accordingly, DOT will be dismissed as a defendant from this matter.

## C.    Exhaustion

"Before pursuing a lawsuit under Title VII or the ADA, a plaintiff must exhaust her administrative remedies by filing a charge with the EEOC." *Hoffman v. Inova Health Care Servs.*, 169 F.4th 207, 218 (4th Cir. 2026). "'[R]equiring a party to file a charge with the EEOC ensures that the employer is put on notice of the alleged violations' and gives the EEOC 'the first crack' at resolving employment discrimination disputes." *Id.* (quoting *Sydnor v. Fairfax Cnty.*, 681 F.3d 591, 593 (4th Cir. 2012)). "Accordingly, '[a] plaintiff's EEOC charge defines the scope of her subsequent right to institute a civil suit,' and '[t]he allegations contained in the administrative charge of discrimination generally limit the scope of any subsequent judicial complaint.'" *Id.* (quoting *Walton v. Harker*, 33 F.4th 165, 172 (4th Cir. 2022)).

Kimbrough's complaint itself is silent with respect to administrative exhaustion and any EEOC charge related to her claims. *See generally* ECF 1; *see also* ECF 11-1, at 7 ("In the case at

6

bar, Plaintiff is silent on exhausting administrative remedies available to her."). However, "the usual practice under the Federal Rules is to regard exhaustion as an affirmative defense," not a plaintiff's pleading requirement. *Jones v. Bock*, 549 U.S. 199, 212 (2007). Accordingly, "'failure to exhaust administrative remedies is not a jurisdictional bar for [ ] employees seeking relief under Title VII' and related statutes barring employment discrimination," and as an affirmative defense, "the employer has the burden of proof." *Lerner v. Shinseki*, Civ. No. ELH-10-1109, 2011 WL 2414967, at *6 (D. Md. June 10, 2011) (first quoting *Zografov v. V.A. Medical Center*, 779 F.2d 967, 969 (4th Cir. 1985); and then citing *Young v. Nat'l Ctr. for Health Servs. Research*, 828 F.2d 235, 238 (4th Cir. 1987)).

Kimbrough attached to her complaint a determination and notice of rights from the EEOC dated April 8, 2025, but that document does not provide insight into the precise nature of the EEOC charge filed. *See* ECF 1-3. Given the Court's conclusion above, *see supra* Section III.A, the Court will not look further than the complaint to consider the issue. *Cf. Lerner v. Shinseki*, 2011 WL 2414967, at *7 (considering matters outside the pleadings and applying the summary judgment standard to determine whether plaintiff had exhausted administrative remedies). Regardless, the Court observes that Kimbrough's opposition does not respond to the argument that her Title VII and ADA claims were not exhausted. *See generally* ECF 13; ECF 14. As several courts in the Fourth Circuit have recognized, "[a] party's failure to respond to an argument made in a motion to dismiss constitutes a concession of that argument." *Borromeo v. Mayorkas*, Civ. No. 1:22-00289-PTG, 2023 WL 2249966, at *5 (E.D. Va. Feb. 27, 2023) (collecting cases); *Williams v. Aberdeen Proving Ground Fed. Credit Union*, No. 1:25-CV-02726-JRR, 2026 WL 1998375, at *3 n.5 (D. Md. July 10, 2026). Accordingly, without reaching the merits of Defendants' affirmative defense, the Court concludes that Kimbrough has conceded the point by failing to respond to it. *Cf. Bruton-*

7

*Barrett v. Gilead Scis., Inc.*, 640 F. Supp. 3d 152, 158–59 (D.D.C. 2022) (refusing to reach merits of exhaustion argument presented at the motion to dismiss stage but dismissing Title VII claim regardless because of failure to respond to the point in opposition briefing). That is one separate basis upon which the Court may dismiss the ADA and Title VII claims in Counts I and II.

## D.    Count I

Defendants also argue that Kimbrough's ADA claim (Count I) must be dismissed because she has failed to satisfactorily allege the elements of her claim. ECF 11-1, at 4. Count I of Kimbrough's complaint alleges that "Defendants discriminated against Plaintiff on the basis of her disability by denying reasonable accommodation, failing to engage in the interactive process, and creating a hostile work environment." ECF 1, at 3 ¶ 15. She further argues that Defendants "violated the ADA by improperly disclosing confidential medical information." *Id.* at 4 ¶ 16. · And "as a direct result of these violations," Kimbrough alleges that she "suffered adverse employment actions . . . including job loss and emotional distress." *Id.* ¶ 17. The Court takes each of these alleged violations in turn.

"[F]or a plaintiff to establish a prima facie case against his employer for failure to accommodate under the ADA, the plaintiff must show: '(1) that [s]he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of his disability;· (3), that with reasonable accommodation [s]he could perform the essential functions of the position . . . ; and (4) that the [employer] refused to make such accommodations.'" *Wilson, v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013) (quoting *Rhoads v. Fed. Deposit Ins. Corp.*, 257 F.3d 373, 387 n.11 (4th Cir. 2001)). Likewise, to assert a hostile work environment claim under the ADA, the plaintiff must show "(1) [s]he is a qualified individual with a disability; (2) [s]he was subjected to unwelcome harassment; (3) the harassment was based on h[er] disability; (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of

8

employment; and (5) some factual basis exists to impute liability for the harassment to the employer." *Fleetwood v. Harford Sys. Inc.*, 380 F. Supp. 2d 688, 704 (D. Md. 2005) (citing *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 177 (4th Cir. 2001)).

Defendants argue that both of Kimbrough's claims fail at the first element because the complaint fails "to allege sufficient facts to establish that she is a qualified individual with a disability." ECF 11-1, at 4. In her complaint, Kimbrough asserts that she "is a qualified individual with a disability." ECF 1, at 3. However, Kimbrough does not identify what her disability is. *See generally id.* Although Kimbrough's opposition states that she "experienced a serious stress-related medical condition" in "mid-2023," ECF 13, at 5, a "plaintiff must allege facts concerning h[er] disability *in the operative pleading* sufficient to establish that plaintiff is disabled within the meaning of the ADA." *Phillips v. Loudoun Cnty. Pub. Schs.*, No. 1:19-CV-501, 2019 WL 5445292, at *6 (E.D. Va. Oct. 23, 2019) (emphasis added). The ADA defines disability as meaning "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment[.]" 42 U.S.C. § 12102(1). Looking at the allegations in the complaint alone, Kimbrough has alleged only "a formulaic recitation" of the first element of an ADA claim. *Twombly*, 550 U.S. at 555. The complaint does not describe if or how her disability limits a major life activity. And although Kimbrough offers slightly more detail in her opposition, "[i]t is well-established that a plaintiff cannot amend the complaint through an opposition to a motion to dismiss." *John C. Grimberg Co. v. Indian Harbor Ins. Co.*, Civ. No. DKC-22-2713, 2023 WL 2758842, at *4 (D. Md. Apr. 3, 2023) (citing *S. Walk at Broadlands Homeowner's Ass'n v.*

9

*OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013)). Accordingly, Kimbrough has failed to state a failure to accommodate or hostile work environment claim under the ADA.[3]

Finally, Kimbrough alleges in Count I that a "Department of Human Resources (DHR) investigation confirmed that Plaintiff's confidential medical information was improperly disclosed to unauthorized personnel, in violation of the ADA's confidentiality protections." ECF 1, at 3 ¶ 10. "The ADA provision that deals specifically with employee medical information, 42 U.S.C. § 12112(d), governs conduct by employers both before and after they hire an employee." *Rohan v. Networks Presentation, LLC*, 175 F. Supp. 2d 806, 813 (D. Md. 2001). Before an employee is hired, an employer may inquire "into the ability of an applicant to perform job-related functions" but may "not conduct a medical examination or make inquiries of a job applicant as to whether such applicant is an individual with a disability or as to the nature or severity of such disability." 42 U.S.C. § 12112(d)(2). After an offer of employment has been made, an employer "shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, *unless* such examination or inquiry is shown to be job-related and consistent with business necessity." *Id.* § 12112(d)(4) (emphasis added).

If a medical examination is requested, the information obtained generally must be "treated as a confidential medical record." *Id.* § 12112(d)(3)(B); *see also Sigley v. ND Fairmont LLC*, 129

---

[3] In light of this conclusion, the Court does not reach Defendants' arguments that Kimbrough also failed to sufficiently allege facts support the fourth element of a failure to accommodate claim (i.e., that she was denied as a reasonable accommodation) or that she has wholly failed to allege a hostile work environment claim. *See* ECF 11-1, at 4–6. The Court observes, however, that with respect to the allegations related to the "deni[al] and delay" of Kimbrough's requested accommodations, or at least the "partial[] approv[al]," ECF 1, at 3 ¶¶ 9, 11, the details are sparse, and even more so with respect to the "hostile environment" she claims to have experienced, *id.* ¶ 12.

10

F.4th 256, 262 (4th Cir. 2025) ("Under 42 U.S.C. § 12112(d)(3)(B), medical information obtained during an employer's post-offer physical must be 'treated as a confidential medical record.'" (citation omitted)). "This disability information may be disclosed only in limited circumstances to supervisors and managers, first aid and safety personnel, and government officials investigating ADA compliance." *Rohan*, 175 F. Supp. 2d at 814 (citations omitted). Significantly, the "plain language of the statute protects only voluntary medical histories 'which are part of an employee health program available to employees at that work site.'" *Id.* (quoting 42 U.S.C. § 12112(d)(4)(B)).

Defendants argue that the "contemporaneous report issued by DHR into Plaintiff's allegations reveals the opposite of Plaintiff's contention," ECF 11-1, at 7, but the Court need not consider any extrinsic evidence to conclude that Kimbrough has failed to state a claim under this provision of the ADA. Kimbrough's complaint is devoid of any allegations suggesting that her employer obtained her medical information "as a result of an employee health program or an inquiry." *Rohan*, 175 F. Supp. 2d at 813 n.12 (identifying several cases holding that § 12112(d) does not protect confidentiality of voluntary disclosures initiated by the employee). In fact, her complaint suggests that she voluntarily provided physician documentation to the City to support her request to telework. *See* ECF 1, at 3 ¶ 9 ("Plaintiff . . . submitted multiple ADA accommodation requests, supported by physician documentation, for continued full-time telework."); *see Sigley v. ND Paper, LLC*, No. 1:22-CV-52, 2023 WL 6300047, at *3 (N.D.W. Va. Sept. 27, 2023) ("Indeed, when an employer does not receive confidential medical information pursuant to § 12112(d), but receives the information another way, the ADA confidentiality provision is not triggered."), *aff'd sub nom. Sigley*, 129 F.4th 256. Accordingly, this claim must also be dismissed.

11

### E.    Count II

In Count II, Kimbrough asserts a claim for retaliation under both Title VII and the ADA because she allegedly "engaged in protected activities, including requesting accommodation and filing internal complaints regarding discrimination and retaliation," which resulted in Defendants "issu[ing] disciplinary actions and a suspension, den[ying] accommodations, and subject[ing] Plaintiff to workplace hostility in retaliation for those activities." ECF 1, at 4 ¶¶ 18–20. Defendants argue that this count must be dismissed because Kimbrough "has alleged no protected activity that is covered by Title VII," such as making complaints or opposing "illegal employment practices *that were based on* the protected classes of Title VII – race, color, religion, sex, or national origin." ECF 11-1, at 8 (emphasis added). Rather, Defendants characterize her allegations as involving only complaints "regarding the financial management of grants at DOT." *Id.*

Insofar as the Court construes Count II as a Title VII claim, the Court agrees with Defendants' assessment. "To establish a prima facie claim of retaliation, a plaintiff must show: (1) that [s]he engaged in protected activity, (2) that the employer took a materially adverse action against [her,] and (3) there is a causal connection between the protected activity and the adverse action." *Sunkins v. Hampton Roads Connector Partners*, 701 F. Supp. 3d 342, 358 (E.D. Va. 2023) (alterations in original) (quoting *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 213 (4th Cir. 2019)). Kimbrough has not alleged that she engaged in a protected activity under Title VII. Title VII prohibits employment practices that discriminate against an employee on the basis of any "individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. But these protected classes do not play a role in Kimbrough's allegations of wrongdoing. *See generally* ECF 1. Accordingly, Kimbrough's Title VII retaliation claim is dismissed. *Cf. Rahmaan v. Wal-Mart Stores, Inc.*, Civ. No. 2:08-2909-DCN, 2010 WL 890057, at *4 (D.S.C. Mar. 8, 2010).

12

However, Kimbrough also asserts a retaliation claim under the ADA in Count II. The ADA's retaliation provision provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). "To establish a prima facie retaliation claim under the ADA, a plaintiff must prove (1) [s]he engaged in protected conduct, (2) [s]he suffered an adverse action, and (3) a causal link exists between the protected conduct and the adverse action." *Reynolds v. Am. Nat. Red Cross*, 701 F.3d 143, 154 (4th Cir. 2012) (citing *A Soc'y Without a Name v. Commonwealth of Va.*, 655 F.3d 342, 350 (4th Cir. 2011)). "Importantly, a plaintiff is not required to prove the conduct [s]he opposed was actually an ADA violation," and instead must only show she "had a 'good faith belief' the conduct violated the ADA." *Id.* (quoting *Freilich v. Upper Chesapeake Health*, 313 F.3d 205, 216 (4th Cir. 2002)).

Defendants suggest that Kimbrough has generally failed to establish a causal link between any protected conduct and the adverse actions she experienced. *See* ECF 11-1, at 8. The Court agrees, primarily based on the fact that Kimbrough's complaint frames her protected conduct as the raising of "serious concerns regarding financial compliance and potential misuse of federal grant funds," which led her to file "a formal whistle blower complaint with the Baltimore City Office of Inspector General." ECF 1, at 2 ¶ 7. Kimbrough then immediately alleges that "[a]fter *these* protected disclosures," she "began experiencing retaliatory actions." *Id.* ¶ 8. Kimbrough goes on to allege that her accommodation requests were "denied or delayed," and that "as a result of continued retaliation," she "was constructively discharged." *Id.* at 3 ¶¶ 9, 12. The only other allegation regarding protected activity is made under Count II, where Kimbrough states that she filed "internal complaints regarding discrimination and retaliation." *Id.* at 4 ¶ 18.

13

"Retaliatory conduct, by its very nature, must come *after* the protected activity." *Hall v. Greystar Mgmt. Servs., L.P.*, 637 F. App'x 93, 98 (4th Cir. 2016). Kimbrough has provided no details about *when* her internal complaints were made and *whether* such "internal complaints regarding discrimination" were related to any treatment by her employer based on her *disability* and requested accommodations. ECF 1, at 4 ¶ 18. Instead, the only detailed information provided in the complaint regarding "protected disclosures" connects her alleged whistleblowing to a list of retaliatory actions, including "[d]enial of telework flexibility despite medical documentation and remote work history." *Id.* at 2–3 ¶ 8. But retaliation for whistleblowing with respect to grant fund usage is not covered by the ADA. *Cf. Reynolds*, 701 F.3d at 154 ("Filing a workers' compensation claim is not something that is covered by the ADA, but rather by retaliation provisions under state law."). Because Kimbrough's assertions regarding any protected activity she engaged in under the ADA are vague and conclusory, and because the retaliatory actions alleged are expressly connected to conduct that is not covered by the ADA, the Court agrees with Defendants that Count II must also be dismissed insofar as it seeks to assert an ADA retaliation claim.

### F.    Counts III, IV, and V

Three of Kimbrough's counts fail to identify a basis in federal or state law. Those are Count III ("whistleblower retaliation"), Count IV ("wage violations and loss of income"), and Count V ("failure to rehire"). ECF 1, at 4–5. As to the claim of "whistleblower retaliation," Kimbrough alleges that "Plaintiff reported concerns about grant mismanagement and fraud to internal authorities" and "Defendants responded with progressive disciplinary actions, exclusion from critical duties, and eventual separation from employment." *Id.* at 4 ¶ 22. Regarding the "wage violations and loss of income," Kimbrough alleges that she was "improperly suspended for five days without pay in May 2024" and "has since been unemployed and denied unemployment benefits based on retaliatory and false allegations." *Id.* ¶ 25. Finally, with respect to her "failure

14

to rehire" claim, Kimbrough alleges that she "applied for multiple positions within Baltimore City, including her former position, and was either ignored or denied interviews" as a result of her "prior protected conduct," which Kimbrough describes as a form of "post-employment discrimination." *Id.* at 5 ¶¶ 27–28.

Unlike Counts I and II, Kimbrough does not identify the cause of action underlying these counts. With respect to the whistleblower retaliation claim, Kimbrough states that Defendants violated "Baltimore City's Whistleblower Protection Policy." ECF 1, at 4 ¶ 23. But policy is not law. It *may* be that Kimbrough seeks to invoke Subtitle 8 of Article I of the Baltimore City Code, which provides for Whistleblower Rights and Responsibilities. *See* Balt. City Code, art. I, §§ 8-1 to 8-13. The ordinance sets out a relatively complex scheme intended to prohibit a "supervisor" from taking "retaliatory personnel action against a whistleblower for making a covered disclosure" under the subtitle. *Id.* § 8-3(a). However, that ordinance provides that a "person aggrieved by a final action under this subtitle may seek judicial review of that action by petition to the Circuit Court for Baltimore City"—it does not create a cause of action in federal court. *Id.* § 8-11(a).

Further, the Court is hesitant to attempt to assign a cause of action to Kimbrough's whistleblower claim, given that "there are several statutes providing whistleblower protections in Maryland with varying covered employees and statutes of limitations." *Tapp-Harper v. Cogen*, Civ. No. ABA-24-2498, 2025 WL 2418588, at *6 n.6 (D. Md. Aug. 21, 2025); *see also Couch v. City of Virginia Beach*, 768 F. Supp. 3d 741, 751 (E.D. Va. 2025) (noting that the federal Whistleblower Protection Act "applies only to federal employees"). Because Kimbrough's whistleblower claim lacks any identified legal basis, the Court will dismiss it. *See Couch*, 768 F. Supp. 3d at 750–51 (E.D. Va. 2025) ("Without any identified legal basis for his whistleblower retaliation claim, the court finds that Plaintiff's claim necessarily fails."); *see also Clark v.*

15

*Maryland Dep't of Pub. Safety & Corr. Servs.*, 247 F. Supp. 2d 773, 776 (D. Md. 2003) (dismissing claims where the Court could not "determine what laws plaintiff relies on to bring his claim" and thus failed "to sufficiently identify the legal grounds for recovery"). The Court reaches the same conclusion regarding Counts IV and V, which read more as requests for relief related to loss of income and reinstatement rather than independent cause of actions. *See* ECF 1, at 4–5.

Finally, to the extent that any of these claims could be construed as torts under Maryland common law, Defendants correctly point out that Kimbrough has failed to provide notice as required by the Maryland Local Government Tort Claims Act ("LGTCA"). *See* ECF 11-1, at 10. Kimbrough does not refute this point. *See* ECF 13; ECF 14. The LGTCA provides that generally "an action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim required by this section is given within 1 year after the injury." Md. Code Ann., Cts. & Jud. Proc. ("CJP") § 5-304(b)(1). Such "notice shall be in writing and shall state the time, place, and cause of the injury." *Id.* § 5-304(b)(2). Kimbrough does not "plead compliance" with the LGTCA "as a substantive element" of any of her claims, nor does she suggest Defendants received any such notice. *Oliver v. Dep't of Pub. Safety & Corr. Servs.*, 350 F. Supp. 3d 340, 354 (D. Md. 2018), *aff'd sub nom. Oliver v. Bartholomew*, 785 F. App'x 166 (4th Cir. 2019). Accordingly, to the extent that Kimbrough's final three counts attempt to assert state law torts against Defendants, they do not survive Defendants' motion to dismiss.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted. However, because the Court observes that at least some of the defects described above may be curable, the dismissal shall be without prejudice.

16

A separate implementing order will issue.

Dated: <u>July 23, 2026</u>                                    <u>                    /s/                    </u>
                                                        Brendan A. Hurson
                                                        United States District Judge

17